United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FRED C. CARR, JR.,

        Plaintiff,

   v.

ALLIED WASTE SYSTEMS OF
ALAMEDA COUNTY, et al.,

        Defendants.
_____/

No. C 10-0715 PJH

**ORDER GRANTING MOTIONS
TO DISMISS IN PART AND DENYING
THEM IN PART**

Before the court is a motion to dismiss filed by Allied Waste Systems of Alameda County, Ray Atkinson, and Fred Penning ("the Allied defendants"), and a motion to dismiss filed by defendants Teamsters Union Local No. 7, Dominic Chiovare, and Joe Silva ("the Union defendants"), and David Rosenfeld, and Weinberg, Roger & Rosenfeld. Having read the parties' papers and carefully considered their arguments, and good cause appearing, the court hereby GRANTS the Allied defendants' motion and GRANTS the Union defendants' motion in part and DENIES it in part.

## BACKGROUND

This is the second of two cases filed by pro se plaintiff Fred C. Carr asserting claims in connection with his termination from employment by Allied Waste Systems of Alameda County ("Allied"). Plaintiff, who was employed by Allied as a driver, was terminated on April 8, 2009, after he refused an order by his supervisor to use a truck other than the one he had used the previous day. Plaintiff had complained that the truck had a minor malfunction, and rather than take out the substitute truck, he wanted to repair the truck himself, or wait until the company mechanic arrived and could effectuate the repair.

1    In a letter dated April 8, 2009 (a copy of which is attached to the first amended

2    complaint in the present action), Penning informed plaintiff,

3

4    [Y]our conduct as an employee of Allied Waste Services of Alameda County
     has been unsatisfactory in the following respect.

5    On April 8, 2009, you violated a direct order from your manager, Ray
     Atkinson, when you refused to take a spare truck.  You responded in a defiant

6    and aggressive manner.  Such action constitutes insubordination.

7    Based on ignoring a direct order from your manager, acting in a defiant and
     aggressive manner, and being warned previously regarding your behavior,

8    your employment with Allied Waste Services of Alameda County is terminated
     subject to the grievance procedure contained in your collective bargaining

9    agreement.

10   At the time plaintiff was discharged, his employment was governed by the

11   "Agreement Between Brotherhood of Teamsters, Local No. 70 and BFI Waste Systems of

12   Alameda County" (the "collective bargaining agreement" or "CBA"), entered into between

13   Allied and plaintiff's bargaining representative, Teamsters Local 70 ("the Union").

14   Among other things, the CBA sets forth a detailed grievance procedure, "intended to

15   be the primary forum for resolutions of any grievance, money claim or dispute arguable [sic]

16   covered by the collective bargaining agreement, and the exclusive forum to the fullest

17   extent permitted by law."  CBA, Art. 14, Sec.1.  Either party to the CBA "may request the

18   grievance panel to decide any question of contract interpretation or practice . . . ."  Id.  The

19   CBA indicates that "gross insubordination" provides a basis for summary dismissal, subject

20   to a later grievance.  CBA, Art. 14, Sec. 2(a).

21   In addition,

22   [i]n all cases, except proven theft, proven possession of firearms or a proven
     gross serious offense, personal violence, or proven gross insubordination

23   each having occurred on the job, . . . an employee to be discharged shall be
     allowed to remain on the job without loss of pay unless and until the

24   discharges [sic] is sustained under the grievance procedure.  In case of
     proven gross serious offense which is not mitigated by an employee's

25   satisfactory work history and years of service, the Employer may remove the
     discharged employee prior to the hearing and disposition of the case.

26
     CBA, Art. 14, Sec. 2(a).  By contrast, "[i]n suspension cases, the employee shall be allowed

27   to remain on the job without loss of pay unless and until the suspension is sustained under

28

2

the grievance machinery . . . " Id.

The grievance procedure comprises several steps.  Where the grievance pertains to a discharge or suspension, the employee must first discuss it with his Shop Steward, Chief Steward, and Supervisor.  If a settlement is not reached, the Business Agent of the Union and the Chief Steward and the Employer shall discuss it.  If it is not resolved at that point, it must be submitted in writing to a grievance panel consisting of two Union representatives and two Employer representatives (the "2 + 2 panel").  If it remains unresolved or deadlocked by the 2 + 2 panel, it must be submitted to another panel consisting of two representatives from the Union, plus one Union representative who is not an official of Local 70; and two representatives from the Employer, plus a third person to be selected by the Employer (the "3 + 3 panel").  CBA, Art. 14, Sec. 1.

In the event that a discharge or suspension grievance remains deadlocked by the 3 + 3 panel, "either party may refer the matter to an arbitrator as provided for in Article 14, Section 3 of this Agreement."  Id.  "The selection of the arbitrator for a decision in discharge cases shall be made by the parties within a reasonable period of time not to exceed thirty (30) days after the deadlock."  CBA, Art. 14, Sec. 2(c).  "In all cases, a decision of the grievance panel or the arbitrator shall be [final] and binding upon the parties."  CBA, Art. 14, Sec. 3.

Plaintiff filed the first suit in Alameda County Superior Court on September 1, 2009, against Allied, Ray Atkinson ("Atkinson" – plaintiff's manager at Allied), and Fred Penning ("Penning" – Atkinson's manager at Allied).  In the complaint, plaintiff asserted claims of breach of contract; negligence; intentional misconduct; violation of California Civil Code § 1790;[1] and violation of Civil Code § 1670.5 (court may refuse to enforce unconscionable contract); and sought damages and declaratory and injunctive relief.

These causes of action in the original complaint were based on the same factual

---

[1] It appeared from the allegations in the complaint that plaintiff intended this as a claim under Civil Code § 1708 (every person is bound to abstain from injuring the person or property of another).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

allegations.  Plaintiff asserted that the 4-month "suspension" without pay constituted a breach of contract and an "abuse of the grievance procedure" set forth in the CBA, primarily because the discipline imposed by the company was disproportionate to the alleged wrongdoing by the plaintiff, which he characterized as "petty;" and also because the company failed to follow the grievance procedure in that it failed to set the original grievance for hearing in April 2009, but rather claimed that it could be heard in May 2009; and because the company "suspended" him without pay rather than continuing to pay him pending the outcome of the grievance hearing and determination.  Plaintiff also alleged that the description of the grievance procedure in the CBA was ambiguous and that the procedure was therefore unenforceable.

Documents attached to the complaint, however, indicated that plaintiff's employment was <u>terminated</u> for insubordination, subject to the grievance procedure in the CBA – not that he had been suspended.  Other documents indicated that the Union subsequently protested plaintiff's termination; that pursuant to the CBA's grievance policy, his grievance was heard by the two and two (2 + 2) and three and three (3 + 3) grievance panels; and that because both panels were deadlocked, plaintiff's grievance was referred to arbitration, pursuant to the provisions of the CBA.

On October 1, 2009, the Allied defendants removed the case to this court as case No. C-09-4675.  In the notice of removal, defendants alleged that plaintiff's claims were all preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

On October 6, 2009, defendants filed a motion to dismiss for failure to state a claim, based on LMRA § 301 preemption.  In the alternative, defendants argued that the complaint should be dismissed because plaintiff had failed to exhaust his contractual remedies under the CBA.

Plaintiff then filed an amended complaint ("FAC").  In addition to alleging facts and theories similar to those alleged in the original complaint, plaintiff asserted "abuse of the grievance process" based on Allied's alleged failure to allow plaintiff to remain on the job pending resolution of the grievance, and alleged failure to follow the grievance procedures

4

**United States District Court**
For the Northern District of California

1    set forth in the CBA.  Plaintiff also claimed that the "suspension," which he previously

2    stated had lasted from April 8, 2009, to August 12, 2009, was still ongoing as of the date of

3    the filing of the FAC.

4         Plaintiff asserted that the "union contract" was "not the issue in this proceeding," and

5    that what was at issue was the larger "social and public policy issue" as to whether, outside

6    the union contract, a direct order can be based on non-existing evidence and whether

7    failure to follow a direct order constitutes insubordination when the order is "illegal" or

8    "impossible."  Plaintiff alleged various claims under California Labor Code § 2856

9    (employee shall follow all directions of employer except where compliance would be

10   impossible or unlawful or would impose new or unreasonable burdens); intentional

11   misconduct; and violation of Civil Code § 1790;[2] and also sought damages and injunctive

12   and declaratory relief.

13        Defendants withdrew the prior motion to dismiss, and on October 30, 2009, filed a

14   motion to dismiss the FAC for failure to state a claim.  As with the prior motion, defendants

15   argued that plaintiff's state law claims were completely preempted by LMRA § 301, and that

16   plaintiff had also failed to exhaust his contractual remedies under the CBA.

17        With their reply brief, defendants submitted a declaration by Mark Prochaska, the

18   Senior Area HR Manager for Allied, in which he stated that on April 8, 2008 – he evidently

19   meant to say April 8, 2009 – Allied had provided plaintiff and the Union with written notice

20   that plaintiff had been terminated (not suspended) for insubordination, subject to the

21   grievance procedure set forth in the CBA; that the Union subsequently protested the

22   termination, and plaintiff's grievance had been heard by the 2+2 and 3+3 grievance panels;

23   that he (Prochaska) had sat in on the grievance proceedings as company representative;

24   that where grievance panels are deadlocked (such as here, on June 18, 2009) the CBA

25   requires that the matter be referred to arbitration; that on June 22, 2009, the Union

26   requested arbitration of plaintiff's case; and that the arbitration was scheduled to proceed

27

28        _____

          [2]  Again, it appears that this was intended as a claim under Civil Code § 1708.

**United States District Court**
For the Northern District of California

1   on March 10, 2010.  Defendants requested the court to take judicial notice of the June 22,

2   2009 letter by the union requesting arbitration, and the November 6, 2009 letter from the

3   arbitrator setting the arbitration for March 10, 2010.

4        At the December 9, 2009, hearing, plaintiff asserted that "the company did not

5   comply with the 30 days of selection of an arbitrator, which states in our contract. . . . By

6   contract they had 30 days to the date to select an arbitrator, which they failed to do so in 30

7   days."  Tr. at 4.  The court then asked, "So you're arguing that they violated the collective

8   bargaining agreement?"  Plaintiff responded, "Yes.  They didn't follow procedure.  They

9   went well past the 30 days in their selection of an arbitrator."

10       The court then stated,

11

12       Mr. Carr, your claims that you've asserted against the defendant are
         preempted by the Labor Management Relations Act.  That means they have
13       to be brought within the context of those procedures that are permitted
         through the Department of Labor.  The arbitration is one of those procedures;
         therefore, you're not permitted to proceed in this court at the same time.  So
14       I'm going to dismiss the claim. . . . You have to go to arbitration.

15   Tr. 5-6.

16       On December 11, 2009, the court issued a written order dismissing the complaint,

17   and entered judgment in favor of defendants.

18       On February 2, 2010, plaintiff filed a second lawsuit in Alameda County Superior

19   Court, against the Allied defendants and also against the Union, Dominic Chiovare

20   ("Chiovare" – the Union's business agent), and Joe Silva ("Silva" – the president of the

21   Union).

22       Plaintiff alleged 14 causes of action – seven against "all defendants" (conspiracy for

23   breach of duty of care under Labor Code § 2856; conspiracy through general negligence

24   and violation of Labor Code § 2856; conspiracy for intentional misconduct under Civil Code

25   § 1708; general negligence in violation of Labor Code § 2856; intentional misconduct under

26   Civil Code § 1708; violation of Labor Code § 2856; and declaratory relief); five against the

27   Allied defendants only (duty of care for a contract under Labor Code § 2856; breach of

28   contract by engaging in unfair labor practice; general negligence in violation of Labor Code

§ 2856 by engaging in unfair labor practice; intentional misconduct under Civil Code § 1708 by violating Labor Code § 2856 by engaging in unfair labor practice; and violation of the duty of care under Labor Code § 2856); and two against the Union defendants (violating duty of care under the contract by engaging in an unfair labor practice by failing to properly represent plaintiff as an agent; and violation of Civil Code § 1708 in their representation of plaintiff as Union agents).

On February 19, 2010, the Union defendants removed the case as case No. C-10-0715 – the present action.  The Union defendants asserted that plaintiff's claims were preempted by LMRA § 301, as the claims against the Allied defendants were premised on a breach of the CBA, and the claims against the Union were premised on a breach of the duty of fair representation.  On February 25, 2010, the Allied defendants filed a joinder in the notice of removal.  On April 7, 2010, the Allied defendants filed a motion to dismiss the complaint in the present action for failure to state a claim.

Meanwhile, on March 10, 2010, Arbitrator Barry Winograd conducted a hearing regarding plaintiff's termination from employment by Allied, and on April 23, 2010, issued an Arbitration Opinion and Award.  The Arbitrator stated that in reaching this decision, he had considered several factors – whether Allied had relied on a reasonable rule or policy as the basis for the disciplinary action; whether there was prior notice to plaintiff – express or implied – of the relevant rule or policy, and a warning about potential discipline; whether the disciplinary investigation was thoroughly conducted, without a predetermined conclusion; whether plaintiff had engaged in the actual misconduct, as charged by Allied; and whether there were any countervailing or mitigating circumstances requiring modification or reversal of the discipline imposed.

The Arbitrator found that plaintiff had adequate notice and warning of the consequences of gross insubordination, noting that an employee working for 15 years in the refuse collection business would be aware of a standard work rule that an employee disagreeing with a supervisor's order must "work now and grieve later."  In addition, the Arbitrator found that plaintiff had been given a clear directive several times, as well as a

United States District Court
For the Northern District of California

warning about the prospect of termination.  Finally, the Arbitrator found that the investigation was adequate, that Allied had offered convincing evidence of plaintiff's gross insubordination, and that there were no countervailing or mitigating circumstances requiring that the discipline be modified or reversed.  The Arbitrator denied the grievance and upheld in its entirety the dismissal of plaintiff from his employment.

On May 6, 2010, six days before the date noticed for the hearing on the Allied defendants' motion to dismiss, plaintiff filed a 53-page first amended complaint ("FAC") with numerous exhibits, asserting 19 causes of action against the Allied defendants, the Union defendants, and counsel for the Union defendants.  Defendants withdrew the motion to dismiss the original complaint.

In addition to the 14 causes of action previously alleged, the FAC adds five new causes of action against two new defendants – David Rosenfeld ("Rosenfeld" – a member of the firm of Weinberg, Roger, and Rosenfeld, counsel for the Union), and the firm of Weinberg, Roger and Rosenfeld ("the Weinberg firm"), and adds Rosenfeld and the Weinberg firm as defendants in two previously-existing causes of action.  However, the docket reflects that no summons was ever issued for Rosenfeld or the Weinberg firm, and plaintiff has filed no proof of service of the summons and complaint on Rosenfeld or the Weinberg firm.[3]

The 19 causes of action alleged by plaintiff in the FAC are as follows:

First cause of action – A claim of "illegal conspiracy for breach of . . . duty of care," under California Labor Code § 2856, alleged against all defendants, and asserting that "defendants got together prior to and or after July 18, 2009 without plaintiffs [sic] knowledge and consent to disregard the CBA agreement and illegal [sic] select and [sic] arbitrator after the 30 mandated time period after the deadlock in the second level of the grievance procedure;" that "defendants knew that after the July 18th 2009 plaintiff was

---

[3] Nevertheless, the motion papers filed by Antonio Ruiz of the Weinberg firm as counsel for the Union also state in the caption that Mr. Ruiz and the Weinberg firm are counsel for Rosenfeld and the Weinberg firm.

1    entitled to all my back wages under their CBA contract since the date of the alleged

2    incident on April 8th 2009 to the date of this legal complaint;" and that defendants "had a

3    duty of care under the CBA contract to act in good faith and fair dealing," which they

4    violated by conspiring to select an arbitrator when they knew they had no legal right to do

5    so.  FAC ¶¶ 47.02, 47.04, 47.06, 47.07.

6               Second cause of action – A claim of "illegal civil conspiracy thru . . . general

7    negligence and a violation of State Labor Code 2856," against all defendants, asserting that

8    "defendants under general negligence had a duty of care to enforce all plaintiff's legal rights

9    under the CBA between defendants," and that "defendants violated the CBA by knowingly

10   engaging in actions such as (a) seeking to select an arbitrator 3 & 1/2 months after the July

11   22, 2009 mandated deadline . . . thru a conspiracy and (b) failing to pay plaintiff during the

12   deadlock in the grievance process thru their conspiracy process (c) engaging in unclean

13   hands."  FAC ¶¶ 50.0, 51.0, 52.0.

14              Third cause of action – A claim of "illegal civil conspiracy . . . for intentional

15   misconduct" under California Civil Code § 1708, against all defendants, asserting that

16        defendants under CC 1708 breached their duty of care by engaging in acts
          which deprive plaintiff of his legal rights under the CBA by (a) seeking to
17        select an arbitrator 3 & 1/2 months after the July 22nd 2009 mandated
          deadline . . . thru a conspiracy which they had no legal right to do so (b)
18        knowingly failing to pay plaintiff during the deadlock in the grievance process
          after a deadlock existed as of June 18, 2009 . . . through their conspiracy
19        process (3) engaging in unclean hands relating to March 10th 2010 arbitration
          hearing.

20
     FAC ¶¶ 79.0, 80.0
21
                Fourth cause of action – A claim of violation of "duty of care for a contract
22
     under [California] Labor Code § 2856," against the Allied defendants, asserting that
23
     "defendants had a duty of good faith and fair dealing under the CBA contract to enforce all
24
     their legal rights under the CBA between defendants," and that
25
          defendants breached their duty of care by violating the CBA by knowingly
26        engaging in actions such as (a) seeking to select an arbitrator 3 & 1/2 months
          . . . after the July 22nd 2009 mandated deadline thru a conspiracy and (b)
27        failing to pay plaintiff during the deadlock in the grievance process thru a
          conspiracy process,
28

                                              9

1   and by "using a disciplinary process to make a factual determination based on conjecture,

2   speculation where the evidence cannot with certainty state that a direct order was violated

3   by plaintiff."  FAC ¶ 87.0

4          <u>Fifth cause of action</u> – A claim of "general negligence violation of State Labor

5   Code 2856," against all defendants, asserting that

6          defendants under general negligence breached their duty of care to enforce
           all plaintiffs legal rights violating the State Labor Code 2856 by knowingly
7          engaging in actions such as (a) seeking to select an arbitrator 3 & 1/2 months
           . . . after the July 22nd 2009 mandated deadline thru a conspiracy which
8          violated my right not to go to arbitration (b) failing to pay plaintiff during the
           deadlock in the grievance after the July 18th 2009 deadlock process,
9

10  and by "using a disciplinary process which it's [sic] direct orders can be determined by

11  speculation, conjecture and not objective acts done by plaintiff(s)."  FAC ¶¶ 95.0, 96.0.

12         <u>Sixth cause of action</u> – A claim of "intentional misconduct" under California

13  Civil Code § 1708, against all defendants, asserting that

14         defendants under CC 1708 breached their duty of care by engaging in acts
           which deprive plaintiff of his legal rights under the State Labor Code 2856 by
15         (a) seeking to select an arbitrator 3 & 1/2 months after the July 22nd 2009
           mandated deadline thru a conspiracy and (b) knowingly failing to pay plaintiff
16         during the deadlock in the grievance process thru their conspiracy process,
           (c) failing to comply with State Labor Code 2856 which forbid defendants [sic]
17         subjective disciplinary process whereby it [sic] enforced it's [sic] direct order
           based on conjecture, speculation not supported by evidence that I violated
18         defendants' direct order to take a spare truck.

19  FAC ¶¶ 103, 104.

20         <u>Seventh cause of action</u> – A claim of violation of California Labor Code

21  § 2856, against all defendants, asserting that

22         defendants violated their duty of care to comply with State Labor Code 2856
           to protect and enforce all plaintiffs legal rights by (a) engaging in indefinite
23         suspension (no time limit without pay), (b) engaging in disciplinary process
           that is subject to subjective, conjunctive evidence (c) reliance upon
24         defendants [sic] unclean hands evidence to support their factual
           determinations;

25  and also asserting that defendants had a duty of care "under State Labor Code 2856 to

26  comply with NLRB (National Labor Relations Board Act), 29 U.S.C. § 151," and that

27         defendants violated NRLB Act, Section 7, Section 8(a)(1), stare decisis court
           ruling (a) that reasonable ground by objective grounds in disciplinary process
28         (b) right to union representation at any confrontation with employer that a

United States District Court

For the Northern District of California

1   possibility of disciplinary action may exists [sic], (c) defendants [sic] unclean
2   hands at arbitration hearing which it [sic] had no right to have arbitration
    process.

3   FAC ¶¶ 110.0, 111.0, 113.0, 114.0.

4           Eighth cause of action – A claim for declaratory relief, against all defendants,

5   seeking a judicial determination (a) that plaintiff was not given a direct order by defendants

6   on April 8, 2009; (b) that plaintiff never engaged in "cussing Ray Atkinson actions that

7   constitute defiant (disobedient/rebellious/insubordinate);" (c) that plaintiff never engaged in

8   an "aggressive (violent/hostile/destructive/belligerent] [sic] manner;" (d) that at the first

9   grievance procedure "defendant did not specify by objective evidence that I had engaged in

10  which constituted defiant or aggressive manner;" (e) that at the second grievance

11  procedure "defendant specify objective evidence supporting it's [sic] position that was not

12  identical to the same objective evidence they had provided at the first grievance

13  procedure;" (f) that the CBA states that in suspension cases, the employee shall be allowed

14  to remain on the job without loss of pay unless and until the suspension is sustained under

15  the grievance mandatory process;" (g) that the CBA specifies that "the second level of

16  defendant's grievance process is deadlocked that it is mandated that within 30 days from

17  that date the arbitrator must be selected by defendants;" (h) that "the second deadlock in

18  this case was on June 18, 2009 approximately;" (i) that "the selection of the arbitrator by

19  defendants was on November 6th 2009 which was 3 1/2 months after the second deadlock

20  on June 18th 2009;" (j) that "defendants on April 18th 2009 did not state on numerous

21  occasions that Ray Atkinson did not state that if I failed to follow a direct order (taking spare

22  truck to work) and returning that spare truck and then return to the yard when the internal

23  blade on my truck 1211 had been adjusted;" (k) that "Dan Lydon as a Representative of

24  Allied Waste Industries at the late February 2010 State Unemployment Appeals hearing

25  stated that plaintiff was only suspended on April 8, 2010 and suspended until the

26  arbitration;" (l) that "Ray Atkinson nor Allied Waste Industries never did communicate to the

27  California Unemployment Appeals Board prior to the late February 2010 hearing;" (m) that

28  "Ray Atkinson had objective (evidence that I did not comply with his direct order (to take

United States District Court

For the Northern District of California

1   spare truck) on April 8th 2010 by taking my key and vehicle papers and heading in the

2   direction of my truck 1211 when no spare truck had been assigned as a spare truck;" and

3   (n) that plaintiff "never cussed Ray Atkinson on April 8th 2010 nor did anyone hear me cuss

4   him after he had made a direct order (to take a spare truck) and that he never fired me

5   immediately on the spot after I cussed him."  FAC ¶¶ 121.0, 122.0, 123.0, 124.0, 125.0,

6   126.0, 127.0, 128.0, 129.0, 130.0, 131.0. 132.0. 133.0, 134.0, 135.0.

7            Ninth cause of action – A claim of "breach of contract by engaging in unfair

8   labor practice on April 8, 2009, by denying plaintiff of their right to union representation

9   under Chapter 7, Sec. 158 of the National Labor Relations Act," against the Allied

10  defendants, asserting that defendants had a duty under California Labor Code § 2856 "to

11  institute disciplinary procedures that did not rely on speculation, conjecture actions as

12  evidence to support any direct order (to take a spare truck);" and that "defendants breached

13  their duty of care by failing to properly comply with their contract with plaintiff, the State

14  Labor Code 2856, and principle of unclean hands;" that "defendants knew that defendants

15  had not complied with CBA procedure to select an arbitrator within 30 days of deadlock

16  between the litigants when they failed to select an arbitrator within 30 days of June 18th

17  2009 as the date of deadlock between litigants;" and that "defendants violated uncleans

18  [sic] principle of law when Ray Atkinson failed to go to State of California Unemployment

19  Appeals board hearing in late February 2020 and let Dan Lydon represent defendant (Allied

20  Waste Industries) by stating that plaintiff was only suspended and not terminated until the

21  arbitration" and that Ray Atkinson contradicted Dan Lydon's statement . . . in late February

22  2010 when he stated I had been terminated on April 8th 2009;" that "defendants had a duty

23  of good faith and fair dealing under the CBA and State Labor Code 2856 to comply with

24  Chapter 7 of the NLRB Act Section 158 – unfair labor practices" – and that "defendants

25  breached their duty of care toward plaintiff by twice engaging in disciplinary procedures on

26  April 8th 2009 without granting plaintiff of my legal right to have Union representation where

27  disciplinary actions had been instituted on two different occasions by defendants was a

28  violation of Chapter 7 of the NLRB Act Section 158."  FAC ¶¶ 139.0, 140.0, 141.0, 142.0,

1    143.0, 145.0.

2            Tenth cause of action – A claim of general negligence under California Labor

3    Code § 2856 "by engaging in unfair labor practice on April 8, 2009 by denying plaintiff the

4    right to union representation under Chap. 7, Sec. 158 of the National Labor Relations Act,"

5    against the Allied defendants, asserting that "defendants under general negligence had a

6    duty of care to enforce all plaintiff's legal rights under State Labor Code 2856 which

7    includes Chapter 7 Sec. 158 of the National Labor Relations Act," and that "defendants

8    under general negligence breached their duty of care to enforce all plaintiffs [sic] legal

9    rights by violating the Chapter 7, Sec. 158 of the National Labor Relations Act by knowingly

10   twice or more times failing to provide Union representation where disciplinary actions were

11   involved;" and that "defendants in breaching their duty of care of good faith and fair dealing

12   under the CBA contract and State Labor Code 2856 by violating Chapter 7 & sec 158 of the

13   NLRB Act has damaged plaintiff . . . "  FAC ¶¶ 149.0, 150.0, 151.0.

14           Eleventh cause of action – A claim of "intentional misconduct" under

15   California Civil Code § 1708 "by violating Labor Code § 2856, by engaging in unfair labor

16   practice on April 8, 2009 by denying plaintiff his right to Union representation under Chap.

17   7, Sec. 158 of the National Labor Relations Act," against the Allied defendants, asserting

18   that "defendants under CC 1708 breached their duty of care by engaging in acts which

19   deprive plaintiff of his legal rights under the CBA by violating the Section 7 Sec. 158 of the

20   National Labor Relations Act by knowingly twice or more times failing to provide Union

21   representation where disciplinary actions were involved."  FAC ¶¶ 155.0, 156.0.

22           Twelfth cause of action – A claim of violation of duty of care under Labor

23   Code § 2856, against the Allied defendants, asserting that "defendants had a duty of care

24   to enforce all laws that were applicable to their CBA document and State Labor Code 2856

25   that existed as of April 8th 2009 with plaintiff;" and that "defendants on April 8th 2009

26   violated Chapter 7 Section 157 of the NLRB Act by failing to provide plaintiff with union

27   representation where it engaged in disciplinary actions against plaintiff two different times."

28   FAC ¶¶ 161.0, 162.0, 163.0.

United States District Court

For the Northern District of California

13.   Thirteenth cause of action – A claim of violation of "duty of care under contract by engaging in an unfair labor practice by failing to properly represent plaintiff as [his] agent," against the Union defendants, Rosenfeld, and the Weinberg firm, asserting that on April 8, 2009, "defendants engaged in two disciplinary actions against plaintiff;" that California Labor Code § 2856 "mandated that [the Allied] defendants had a duty to comply with Chapter 7 of Sec. 158 of the NLRB Act" and that "defendants knew or should have known that Chapter 7 of sec. 158 of the NLRB Act mandated that when [the Allied defendants] engaged in two disciplinary actions on April 8th 2009 that plaintiff had a legal right of Union representation;" that "defendants had knowledge that disciplinary actions had existed on April 8th 2009 and failed to mandate that plaintiff's right to Union representation had been violated;" that "the CBA mandated that I was to be paid during grievance process and that if the second level was deadlocked that both parties have 30 days from that date to select an arbitrator;" that "defendants knew that the grievance process was deadlocked as of June 18th 2009 for the second level;" that "defendants knew that under the CBA the 30 deadline for selecting an arbitrator was July 18th 2009;" that "defendants disregarded the CBA and without plaintiff's knowledge and or consent selected an arbitrator on November 6th 2009;" and that "defendants knew prior to July 18th 2009 and thereafter that I was not paid any wages as mandated by the CBA."  FAC ¶¶ 169.0, 170.0, 171.0, 172.0, 173.0, 174.0, 175.0, and 176.0.

Fourteenth cause of action – A claim of violation of California Civil Code § 1708, against the Union defendants, Rosenfeld, and the Weinberg firm, in their representation as plaintiff's union agents, asserting that "defendants had a duty to comply with CC 1708 which required that defendant not engage in actions that could injure others which included also complying with Chapter 7 sec. 157 of the NRLB Act;" that "defendants knew as of April 8th 2009 that the other defendants had engaged in two disciplinary actions against plaintiff;" that "defendants knew after April 8th 2009 till June 18th 2009 that during the grievance process it was deadlocked as of July 18th 2009;" that "defendants knew as of July 18th 2009 that no arbitrator . . . had been selected by none of the defendants" and

United States District Court
For the Northern District of California

1   "[t]herefore defendants knew that no right to select an arbitrator existed;" that defendants

2   knew that the CBA mandated that during the grievance process all union members are

3   entitled to their backpay during the deadlock;" that "defendants by engaging in a conspiracy

4   with other defendants to select an arbitrator where no such right exists constitute [sic] and

5   [sic] unfair labor practice under Chapter 7 sec. 157 of the NLRB  Act;" that "defendants

6   knew I had not been paid any wages during the grievance process of the CBA and that I

7   have been suspended for an indefinite time period which has been over a period of 1 year

8   and 1 month;" that "defendants engaged in a Civil Conspiracy to deprive plaintiff of my legal

9   right not to have to go to arbitration after the deadlock after the 3 + 3 grievance process"

10  and "had specific knowledge that an arbitrator had been illegally selected on November 6th

11  2009 for a hearing set for March 10th 2010;" and that "[t]he arbitrator relied upon a illegal

12  disciplinary process that violated Labor Code 2856 by relying on allegations that were

13  conjecture, speculation that in and among themselves had no basis to rule that I had not

14  complied with an alleged direct order of Ray Atkinson."  FAC

15  ¶¶ 184.0, 185.0, 186.0, 187.0, 188.0, 198.0, 190.0, 191.0, 192.0, 196.0.

16           <u>Fifteenth cause of action</u> – A claim of violation of California Labor Code

17  § 2856, against Rosenfeld and the Weinberg firm, asserting that "defendants had

18  knowledge as of June 22nd 2009 that the grievance procedure was deadlocked concerning

19  the collective bargaining agreement with Teamsters Local 70 and that they were formally

20  requesting that the above Union Case No. 9-039-KS be moved to arbitration;" that

21  "defendants had knowledge of the Union's CBA agreement that had a clause stating that "if

22  the grievance panel reaches a deadlock on a discharge or suspension either party may

23  submit the matter to an impartial arbitrator for final decision" and that "[t]he selection of the

24  arbitrator for decision in discharge cases shall be made by the parties within a reasonable

25  time not to exceed thirty (30) days after the deadlock;" that "the CBA had a clause that if an

26  [sic] grievance procedure was deadlocked the party is entitled to all their back pay and their

27  job;" that "defendants knew that after July 18th 2009 under the terms of the CBA

28  agreement that plaintiff's employer and the Teamster Brotherhood Local Union #70 had

United States District Court

For the Northern District of California

waived their right to select any arbitrator;" that "defendant and plaintiff's employer selected

an arbitrator in November of 2009 for an [sic] March 10th 2010 hearing date without

notifying plaintiff; that "plaintiff did not know until after November 6th 2009 that defendants

had conspired with plaintiff's employer to deprive plaintiff of my right not to go to arbitration

to settle my dispute with defendants;" that "plaintiff sent out a letter to defendants' attorneys

that I had a legal right not to be at the March 10th 2010 arbitration;" that "defendants

communicated with plaintiff on March 5th 2009 [sic] approximately that they would

represent me in the arbitration hearing on March 10th 2010;" that on March 10, 2010,

plaintiff met with "Rosefeld [sic], Chiovatini [sic] with Mr. Whitaker being present," and "I

raised issue that a conflict of interest existed between David Rosefeld [sic] & his firm and

My self since he represented the Union who I was suing and myself at the same time;" that

"I informed David Rosefeld [sic] on March 10th 2010 that I wanted him to present a defense

that my employer and the union by failing to comply with the mandated 30 day selection

process of an arbitrator waived any right to go to arbitration" that "[t]herefore I was already

entitled to my back pay and my job as of July 18th 2009," but "defendant (David Rosefeld

[sic]) communicated to me in the presence of Mr. Whitaker that he would not present that

as a defense at the March 10th 2010 arbitration;" and that he also "asked David Rosefeld

[sic] to present as a defense that the CBA agreement was unconscionable as a matter of

law," but that "David Rosefeld [sic] stated he would not do so;" that "Mr. Rosefeld [sic]

communicated to me and others on March 10th 2010 hearing that if I did not state I was

waiving the conflict of interest that the arbitration would be withdrawn and that he would not

represent me" and "[t]hus I would have to go to Federal Court to have them address the

matter and that I would lose;" that "based on defendants [sic] aforementioned actions that I

was being coerced to sign an agreement and that I had only one option that was to inform

the arbitrator that I waived the conflict of interest without bring forth the aforementioned

defenses;" that Rosenfeld's "ultimatum" to plaintiff that he needed to acknowledge that he

would agree to be bound by the arbitrator's decision, and that the arbitrator has jurisdiction

to decide the issue concerning his termination, and that if he refused to do this, "the Union

United States District Court

For the Northern District of California

will withdraw the grievance because it doesn't make any sense to proceed to arbitration if you do not agree that the arbitrator has the power to decide this," which plaintiff considered to be an act of "coercion," and by reason of which he informed Rosenfeld that he was signing the agreement "under duress;" that in a letter dated April 20, 2010, Rosenfeld stated that he was not plaintiff's lawyer, had never been plaintiff's lawyer, and that it would be inappropriate for him to be plaintiff's lawyer because he was also defending Local 70 in plaintiff's lawsuit; and that because plaintiff had sent the arbitrator a copy of the Union's draft brief, it would be obvious to the arbitrator that plaintiff did not trust the Union to represent him.  FAC ¶¶ 202.0, 203.0, 204.0, 205.0, 206.0, 207.0, 208.0, 209.0, 210.0, 211.0, 212.0, 213.0,  217.0, 218.0, 219.0, 221.0.

Sixteenth cause of action – A claim of "general negligence" under California Labor Code § 2856, against Rosenfeld and the Weinberg firm, asserting that "Rosefeld [sic] and his business [the Weinberg firm] as stating that he was representing my interest at the March 10th 2010 arbitration had a duty of care to attempt to protect my interest at all times," and that "defendants breached their duty of care by failing to advocate and protect my right to present all defenses" . . . the 30 day mandated selection of an arbitrator under the CBA agreement; whether the CBA agreement was unconscionable; [w]hether defendants failed to comply with Chapter 7 sec. 157 of the NLRB Act."  FAC ¶¶ 241, 242.0, 243.0.

Seventeenth cause of action – A claim of "violation of intentional misconduct" under California Civil Code § 1708, against Rosenfeld and the Weinberg firm, asserting that "defendants knew or should have known that plaintiff had a legal right under the CBA with my Union that after 30 days after a deadlock without selection of an arbitrator;" that Allied and the Union "waived the right to go to arbitration pertaining to my suspension," and "I was immediately entitled to all my back pay and my Job as of July 18, 2009;" that "defendant knew that the selection of an arbitrator in November 2009 was 3 and 1/2 months after the July 18th 2009 deadlock was illegal" and "when they allowed plaintiff to attend an arbitration to expose me to the potential to be terminated was a violation of my legal rights;" and also

United States District Court

For the Northern District of California

1  asserting that "I have lost access to my backpay that I was entitled to since July 18th 2009

2  till the date of filing this amended complaint;" and that

3

4  > defendants initially coerced me into giving up all my defenses against
> defendants which specifically included (1) that defendants had no right to
> arbitration by waiving the 30 day deadline after the deadlock of July 18th
5  > 2009[,] (2) that defendants [sic] CBA contract was unconscionable under
> California State Law[,] (3) defendants had illegally engaged in unclean hands
6  > by Ray Atkinson and Dan Lydon's testimony at the March 10th 2010
> arbitration hearing[,] (4) defendants violated the Nation [sic] Labor relations
7  > Act by failing to provide union representation when Ray Atkinson allegedly
> engaged in suspension and or possible termination upon plaintiff on April 18th
8  > 2009.

9  FAC ¶¶ 248.0, 249.0, 250.0, 252.0.

10         Eighteenth cause of action – A claim against Rosenfeld and the Weinberg

11  firm "for violation of their ethics as an attorney," asserting that "David Rosefeld [sic] as an

12  attorney of law and their legal Corporation have a legal obligation to protect the interest of

13  their client at all times;" and that as of July 18, 2009, defendants "knew or should have

14  known that plaintiff had a legal right not to go to arbitration after [Allied] and the Union had

15  waived their legal right to go to arbitration;" that "defendants knew prior to the March 10th

16  2010 hearing that the arbitrator had no legal right to a hearing pertaining to my employment

17  rights;" that Rosenfeld "by compelling me to attend a process (arbitration) where an obvious

18  conflict of interest existed by coercion upon myself violated his ethical obligation as an

19  attorney by placing the interest of the Union and his self above my interest as his client."

20  FAC ¶¶ 260.0, 261.0, 262.0, 263.0.

21         Nineteenth cause of action (listed in FAC as a second "Eighteen [sic] cause of

22  action") – A claim for "fraud/ as an act of promissory estoppel," against Rosenfeld and the

23  Weinberg firm, asserting that Rosenfeld "had a duty of care as an attorney to protect his

24  clients [sic] interest;" that Rosenfeld "prior to the March 10th 2010 arbitration on a couple of

25  accessions [sic] stated to plaintiff that I was his client;" that Rosenfeld "had a duty of care at

26  all times after he represented that he was my attorney to protect all my interest;" that

27  Rosenfeld "breached his duty of care when he refused to present my legal defenses at the

28  March 10th 2010 arbitration hearing;" that Rosenfeld "engaged in coercion upon me prior to

United States District Court

For the Northern District of California

1  the March 10th 2010 hearing breach [sic] his duty of care by me giving up certain of my

2  legal defenses such as (a) defendants waived their legal rights under the CBA & (2) the

3  CBA was unconscionable & (3) that defendants engaged in unclean hands;" that as a direct

4  result of "defendant's breach of their care," (a) plaintiff's defenses "were not brought before

5  the arbitrator" and "were not considered by the arbitrator," (b) "defendants engaged in a

6  factual determination process that relied upon facts that were based on conjecture,

7  speculation as to whether plaintiff violated defendants' direct order to take spare truck as a

8  disciplinary process," and (c) "I lost my right not to go to arbitration; the arbitrator had no

9  legal authority to make factual determinations based on speculation, conjecture and that I

10  had violated a direct order to take a spare truck thereby losing my job." FAC ¶¶ 267.0,

11  268.0, 269.0, 271.0, 272.0, 273.0, 274.0, 275.0.

12       On June 2, 2010, the Allied defendants and the Union defendants filed the present

13  motions to dismiss the FAC.

## DISCUSSION

15  A.    Legal Standard

16       A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

17  alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

18  Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen.

19  Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for

20  failure to state a claim, a complaint generally must satisfy only the minimal notice pleading

21  requirements of Federal Rule of Civil Procedure 8.

22       Rule 8(a)(2) requires only that the complaint include a "short and plain statement of

23  the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Specific

24  facts are unnecessary – the statement need only give the defendant "fair notice of the claim

25  and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (citing Bell

26  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  All allegations of material fact are

27  taken as true. Id. at 94.  However, a plaintiff's obligation to provide the grounds of his

28  entitlement to relief "requires more than labels and conclusions, and a formulaic recitation

United States District Court

For the Northern District of California

1  of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and

2  quotations omitted).  Rather, the allegations in the complaint "must be enough to raise a

3  right to relief above the speculative level." Id.

4         A motion to dismiss should be granted if the complaint does not proffer enough facts

5  to state a claim for relief that is plausible on its face. See id. at 558-59.  "[W]here the

6  well-pleaded facts do not permit the court to infer more than the mere possibility of

7  misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is

8  entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. __, 129 S.Ct. 1937, 1950 (2009) (citation

9  omitted).

10        In addition, when resolving a motion to dismiss for failure to state a claim, the court

11  may not generally consider materials outside the pleadings. Lee v. City of Los Angeles,

12  250 F.3d 668, 688 (9th Cir. 2001).  There are several exceptions to this rule.  The court

13  may consider a matter that is properly the subject of judicial notice, such as matters of

14  public record. Id. at 689; see also  Mack v. South Bay Beer Distributors, Inc., 798 F.2d

15  1279, 1282 (9th Cir. 1986) (looking beyond complaint to matters of public record does not

16  convert Rule 12(b)(6) motion to one for summary judgment).  Additionally, the court may

17  consider exhibits attached to the complaint, see Hal Roach Studios, Inc. V. Richard Feiner

18  & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced by the

19  complaint and accepted by all parties as authentic. See Van Buskirk v. Cable News

20  Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).

21  B.     Defendants' Motions

22        Both the Allied defendants and the Union defendants argue that all claims alleged

23  against them should be dismissed.  The causes of action asserted against the Allied

24  defendants are the first (conspiracy for breach of duty of care under Labor Code

25  § 2856); second (conspiracy through general negligence and violation of Labor Code

26  § 2856); third (conspiracy for intentional misconduct under Civil Code § 1708); fourth (duty

27  of care for contract under Labor Code § 2856); fifth (negligent violation of Labor Code

28  § 2856); sixth (intentional misconduct under Civil Code § 1708); seventh (violation of Labor

United States District Court
For the Northern District of California

Code § 2856); eighth (declaratory relief); ninth (breach of contract by engaging in unfair labor practice on April 8, 2009); tenth (negligence under Labor Code § 2856 by engaging in unfair labor practice on April 8, 2009); eleventh (intentional misconduct under Civil Code § 1708 by violating Labor Code § 2856 by engaging in unfair labor practice on April 8, 2009); and twelfth (violation of duty of care under Labor Code § 2856 and violation of NLRA § 157 on April 8, 2009).

The Allied defendants contend that the FAC should be dismissed because it was filed more than 21 days after defendants filed the motion to dismiss, in violation of Federal Rule of Civil Procedure 15(a)(1); and also assert that plaintiff's claims are barred by the doctrine of res judicata, and are preempted by LMRA § 301, and that, to the extent that plaintiff alleges breach of the duty of fair representation, that claim is also preempted by federal law.  In addition, they contend that the court should award them attorney's fees, based on the fact that plaintiff has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons."

The causes of action asserted against the Union defendants are the first (conspiracy for breach of duty of care under Labor Code § 2856); second (conspiracy through general negligence and violation of Labor Code § 2856); third (conspiracy for intentional misconduct under Civil Code § 1708); fifth (negligent violation of Labor Code § 2856); sixth (intentional misconduct under Civil Code § 1708); seventh (violation of Labor Code § 2856); eighth (declaratory relief); thirteenth (violation of duty of care under contract by engaging in unfair labor practice on April 8, 2009 and by failing to adequately represent plaintiff through the grievance and arbitration process); and fourteenth (violation of Civil Code § 1708 on April 8, 2009, and by failing to adequately represent plaintiff through the grievance and arbitration process).

The Union defendants seek dismissal of the above-described claims asserted against them, and also the claims asserted against Rosenfeld and the Weinberg firm (the thirteenth through nineteenth causes of action, and possibly the first through third and fifth through eighth causes of action, which are asserted against "all defendants").  However,

United States District Court

For the Northern District of California

the motion does not address any claims other than those against the Union defendants.
The Union defendants argue that plaintiff's state law claims are all preempted by LMRA
§ 301 and by the duty of fair representation.  They also assert that plaintiff cannot state a
claim of breach of the duty of fair representation against Chiovare and Silva.

As an initial matter, the court finds that the causes of action alleging violations of
California Civil Code § 1708 and California Labor Code § 2856 fail to state a claim, as do
the causes of action for civil conspiracy based on violations of those two statutes.  Civil
Code § 1708, which provides in full that "[e]very person is bound, without contract, to
abstain from injuring the person or property of another, or infringing upon any of his or her
rights," does not create a private right of action.  See Von Grabe v. Sprint PCS, 312
F.Supp. 2d 1285, 1308 & n.21 (S.D. Cal. 2003) (citing Katzberg v. Regents of Univ. of
California, 29 Cal. 4th 300, 327 (2002) (section 1708 merely "states a general principle of
law")).  Thus, the sixth, eleventh, fourteenth, and seventeenth causes of action fail to state
a claim.

The fourth, fifth, seventh, tenth, twelfth, fifteenth, or sixteenth causes of action also
fail to state a claim.  Each alleges violation of Labor Code § 2856, which provides that "[a]n
employee shall substantially comply with all the directions of an employer concerning the
service on which he is engaged, except where such obedience is impossible or unlawful, or
would impose new and unreasonable burdens upon the employee."

Section 2856 codifies the principle that willful disobedience can be considered to
provide good cause for disciplinary action against employee – which good cause would
preclude the employee from collecting unemployment benefits.  See generally Lacy v.
California Unemployment Ins. Appeals Bd., 17 Cal. App. 3d 1128, 1132 (1971).  In other
words, since the employer in unemployment compensation proceedings bears the burden
of establishing misconduct in order to protect its reserve fund, see Cerberonics, Inc. v.
Unemployment Ins. Appeals Bd., 152 Cal. App. 3d 172, 176 (1984), the claim that willful
disobedience was justified is a defense that the employee can assert in an attempt to
establish that there was no misconduct that warranted the discharge.

22

**United States District Court**
For the Northern District of California

By its terms, § 2856 does not provide for any private right of action based on the employee's allegations of unfair or unlawful discipline for insubordination,[4] and the court has located no case holding that § 2856 provides an employee with an affirmative cause of action for a claim of unlawful termination or other unlawful imposition of discipline.  While § 2856 arguably might provide the basis for a claim of wrongful termination in violation of public policy – a claim alleged nowhere in the FAC – the court has located no case holding that it is a valid cause of action or providing any analysis or guidance with regard to such a claim.

In this case, moreover, plaintiff's terms of employment were governed by the CBA entered into by Allied and the Union.  Under § 301 of the Labor Management Relations Act ("LMRA"), federal law preempts state law actions that require interpretation of a CBA. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985) (state law tort remedy that is "inextricably intertwined" with consideration of terms of a labor contract will be preempted by the LMRA).  A state-law wrongful termination in violation of public policy claim is preempted where the court would be required to "analyze and interpret the [just cause determination] provisions of the CBA to determine whether [a p]laintiff was wrongfully terminated."  Hollinquest v. St. Francis Med. Ctr., 872 F.Supp. 723, 726 (C.D. Cal. 1994) (citing Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988)).

Finally, "[c]ivil conspiracy is not an independent tort."  See Berg & Berg Enters., LLC v. Sherwood Partners, Inc., 131 Cal. App. 4th 802, 823 (2005).  Rather,  it is

> a legal doctrine that imposes liability on persons who, though not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.  By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy.  In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors.

Applied Equipment Corp. v. Litton Saudi Arabia Ltd, 7 Cal. 4th 503, 510-11 (1994) (citations omitted).

---

[4]  Even if § 2856 did provide a private right of action, plaintiff has alleged no facts showing that taking a substitute truck would have been impossible, or unlawful, or would have imposed new burdens on him.

United States District Court

For the Northern District of California

1      To maintain an action for civil conspiracy, a plaintiff must allege that the defendant

2  had knowledge of and agreed to both the objective and the course of action that resulted in

3  an injury, that there was a wrongful act committed pursuant to that agreement, and that

4  there was resulting damage.  <u>Berg</u>, 131 Cal. App. 4th at 823.  A conspiracy "must be

5  activated by the commission of an actual tort."  <u>Allied</u>, 7 Cal. 4t hat 511.  Here, the first and

6  second causes of action allege civil conspiracy to violate Labor Code § 2856, and the third

7  cause of action alleges civil conspiracy to violate Civil Code § 1708.  However, because

8  plaintiff cannot state a claim under either of those statutes, he cannot allege the necessary

9  "wrongful act."

10      The court finds further that the eighth cause of action for declaratory relief fails to

11  state a claim.  As described above, plaintiff seeks a judicial declaration with regard to

12  certain facts.  The Declaratory Judgment Act provides that "[i]n a case of actual controversy

13  within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate

14  pleading, may" – but is not required to – "declare the rights and other legal relations of any

15  interested party seeking such declaration."  28 U.S.C. § 2201; <u>see also</u> <u>MedImmune, Inc. v.</u>

16  <u>Genentech, Inc.</u>, 549 U.S. 118, 126 (2007).

17      An "actual controversy" is one that is appropriate for judicial determination – "definite

18  and concrete, touching the legal relations of parties having adverse interest" and "a real

19  and substantial controversy, admitting of specific relief through a decree of conclusive

20  character. . . ."  <u>Aetna Life Ins. Co. of Hartford, Conn. v. Haworth</u>, 300 U.S. 227, 240-41

21  (1937); <u>see also</u> <u>MedImmune</u>, 549 U.S. at 126.  Here, the eighth cause of action does not

22  does not articulate an "actual controversy," as to which the court can grant declaratory

23  relief, as it does not seek a declaration regarding the rights and other legal relations of the

24  plaintiff.

25      In addition to the problems identified above with regard to the Civil Code § 1708

26  claims, the Labor Code § 2685 claims, the civil conspiracy claims, and the claim for

27  declaratory relief, the court finds that the claims asserted against the Allied defendants and

28  against the Union defendants should be dismissed because they are preempted by federal

United States District Court

For the Northern District of California

1  law.

2          When the FAC is stripped of its excess verbiage, what remains are the claims that

3  the Allied defendants subjected plaintiff to an "indefinite suspension," subjected him to a

4  "subjective disciplinary process," and failed to pay his wages as required under the CBA;

5  and that the Allied defendants and the Union defendants violated the CBA and/or breached

6  the duty of fair representation by failing to provide Union representation at the time of

7  imposing discipline, by selecting an arbitrator after the deadline set in the CBA, and by

8  going to arbitration when they had "no legal right to do so."  In addition, plaintiff asserts that

9  Ray Atkinson failed to go to the Unemployment Appeals Board hearing and allowed Dan

10  Lydon to represent Allied, and that the Arbitrator had insufficient evidence to justify denying

11  plaintiff's grievance and upholding the dismissal.

12          The claims alleging violations of the CBA are preempted by LMRA § 301, which

13  provides that "[s]uits for violation of contracts between an employer and a labor

14  organization representing employees in an industry affecting commerce as defined in this

15  chapter . . . may be brought in any district court of the United States having jurisdiction of

16  the parties, without respect to the amount in controversy or without regard to the citizenship

17  of the parties."  29 U.S.C. § 185.

18          It is well-settled that LMRA § 301 preempts all state law claims that require

19  interpretation of the terms of a CBA.  Lingle, 486 U.S. at 413; see also Franchise Tax Bd. of

20  State of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 23

21  (1983) ("Any such suit is purely a creature of federal law, notwithstanding the fact that state

22  law would provide a cause of action in the absence of § 301).  The pre-emptive force of §

23  301 "is so powerful as to displace entirely any state law cause of action for violation of

24  contracts between an employer and a labor organization."  Franchise Tax Bd., 463 U.S. at

25  23 (citation and quotation omitted).  "[E]ven suits based on torts, rather than on breach of

26  collective bargaining agreements, are governed by federal law if their evaluation is

27  'inextricably intertwined with consideration of the terms of [a] labor contract.'"  Miller v. AT &

28  T Network Systems, 850 F.2d 543, 545 (9th Cir. 1988) (quoting Allis-Chalmers, 471 U.S. at

1   213).

2        In the prior action, plaintiff's state law claims were found to be preempted by LMRA

3   § 301 because they were inextricably intertwined with matters controlled by the CBA.  As

4   noted above, plaintiff asserted that his "suspension" constituted a breach of contract and an

5   "abuse of the grievance procedure" set forth in the CBA, and that the description of the

6   grievance procedure in the CBA was ambiguous and that the procedure was therefore

7   unenforceable.

8        To state a claim under LMRA § 301, a plaintiff must adequately plead exhaustion of

9   the grievance procedures set forth in the CBA.  See DelCostello v. International Bhd. of

10  Teamsters, 462 U.S. 151, 163 (1983).  In the prior action, plaintiff effectively conceded in

11  both in his opposition to the motion to dismiss and at the hearing that no arbitration had yet

12  taken place.  Amendment of the complaint would have been futile, because plaintiff could

13  not have stated a claim under LMRA § 301.

14       In the present action, while the allegations in the FAC are exponentially more

15  convoluted and incomprehensible than the allegations in the prior case, it is clear that the

16  claims against Allied are preempted by LMRA § 301, as they relate to provisions in the

17  CBA governing disputes concerning discharges and suspensions.  See Allis-Chalmers, 471

18  U.S. at 213.  Although plaintiff's causes of action are presented as claims under California

19  law, they are grounded in the same allegations as in the prior suit – that plaintiff was

20  wrongfully suspended or terminated without pay, and that the defendants failed to comply

21  with proper grievance procedures under the CBA.

22       Even had plaintiff alleged any viable state law claims, he could not maintain any

23  independent of the CBA because his claims all implicate provisions of the CBA regarding

24  discharges, suspensions, and the grievance process (including the arbitration).  As is

25  evident from the court's summary, above, numerous paragraphs in the FAC either

26  reference the CBA, or concern a matter that is governed by the CBA.  Thus, in order to

27  determine whether plaintiff was wrongfully discharged without pay or whether defendants

28  failed to follow proper grievance procedures, the court would have to interpret various

1    provisions of the CBA.

2         The claims asserted against the Union are similarly preempted by LMRA § 301,

3    because they are all premised on the central allegation that plaintiff was discharged

4    inappropriately and that the Union and its representatives failed to properly process his

5    grievance, and because resolution of these claims would require the court to interpret

6    provisions of the CBA.  Indeed, it would be impossible for the court to evaluate plaintiff's

7    claims without interpreting the CBA.[5]

8         Plaintiffs' claims against the Union are also preempted by the doctrine of the duty of

9    fair representation.  This is "a statutory duty implied from the grant to the union by section

10   9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), of exclusive power to

11   represent all employees of the collective bargaining unit."  Retana v. Apartment, Motel,

12   Hotel & Elevator Operators Union, Local No. 14, AFL-CIO, 453 F.2d 1018, 1021-22 (9th

13   Cir. 1972).  The duty of fair representation is "imposed on labor organizations because of

14   their status as the exclusive bargaining representative for all of the employees in a given

15   bargaining unit."  Peterson v. Kennedy, 771 F.2d 1244, 1253 (9th Cir. 1985); see also

16   DelCostello, 462 U.S. at 164 n.14; Ford Motor Co. v. Huffman, 345 U.S. 330 (1953).  The

17   duty applies to all union representation of activity, including the enforcement of collective

18   bargaining agreements.  Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991).

19        Because the duties related to this representation are defined solely by federal law,

20   the duty of fair representation is a federal question.  Dente v. Int'l Org. of Masters, Mates

21   and Pilots, Local 90, 492 F.2d 10, 11-12 (9th Cir. 1973); see also BIW Deceived v. Local

22   S6, Indus. Union of Marine and Shipbuilding Workers, 132 F.3d 824, 831-32 (1st Cir.

23   1997); Nosie v. Association of Flight Attendants, __ F.Supp. 2d__, 2010 WL 2594500 at 8

24   (D. Hawai'i, June 28, 2010); Madison v. Motion Picture Set Painters and Sign Writers Local

25   729, 132 F.Supp. 2d 1244, 1257 (C.D. Cal. 2000).

26

27        [5] The claims against Silva and Chiovare are dismissed with prejudice, because LMRA

28   § 301(b), 29 U.S.C. § 185(b), shields Union officers and members from liability for judgments
     against unions.  See Atkinson v. Sinclair Refining Co., 370 U.S. 238, 247-48 (1962).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

Thus, the court agrees with defendants that all the state law claims alleged against the Allied defendants and against the Union defendants are preempted by LMRA § 301 and/or by the duty of fair representation.  Nevertheless, the fact that the state law claims are preempted does not mean that plaintiff has no claim – it simply means that he must amend the complaint to state a claim under federal law.

Although the allegations in the FAC are far from clear, the court construes the FAC as alleging a "hybrid" claim for breach of a collective bargaining agreement under the LMRA and for breach of the duty of fair representation under the NLRA.  The Supreme Court has explained that the two claims that make up a hybrid claim are "inextricably interdependent" – that is, to prevail against either the employer or the union, the employee must prove both that the employer breached the collective bargaining agreement, and also that the union breached its duty of fair representation.  See DelCostello, 462 U.S. at 165.

To state a claim of breach of the CBA under LMRA § 301, a plaintiff is ordinarily required to allege that he has exhausted the grievance or arbitration remedies provided in the procedures set forth in the collective bargaining agreement.  Id. at 163.  However, the Supreme Court has held that such hybrid claims are asserted as an exception to the usual requirement that an employee must exhaust the grievance procedures in a collective bargaining agreement before he may file suit in federal court.  Id. at 163-64.

To state a "hybrid" claim, plaintiff must allege facts showing that his discharge was contrary to the CBA, and must also plead facts showing that the Union breached its duty of fair representation.  See id. at 164-65.  Further, with regard to the Union, plaintiff must allege facts showing that the Union's conduct towards him was "arbitrary, discriminatory, or in bad faith."  Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44-48 (1998).  He must also allege a causal connection between the Union's wrongful conduct and his injuries.  Ackley v. Western Conference of Teamsters, 958 F.2d 1463, 1472 (9th Cir. 1992).  Allegations of negligence are insufficient.  United Steelworkers of Am. v. Rawson, AFL-CIO-CLC, 495 U.S. 362, 376 (1990); see also Eichelberger v. N.L.R.B., 765 F.2d 851, 857 n.10 (9th Cir. 1985).

United States District Court
For the Northern District of California

**CONCLUSION**

In accordance with the foregoing, the Allied defendants' motion to dismiss is GRANTED.  The Union defendants' motion to dismiss is GRANTED as to the claims asserted against the Union, Chiovare, and Silva, but is DENIED as to the claims asserted against Rosenfeld/Weinberg.  The claims against Chiovare and Silva are dismissed with prejudice.  The claims against the Allied defendants and against the Union are dismissed with leave to amend to state a federal hybrid § 301/duty-of-fair representation claim.

The third amended complaint must be filed no later than December 29, 2010. Plaintiff may not re-allege any of the state law claims asserted in the SAC against the Allied defendants or against the Union – that is, no claims under California Civil Code § 1708, no claims under California Labor Code § 3856, and no claims of negligence or fraud.  In addition, plaintiff may add no new defendants or new claims (apart from the hybrid § 301/duty-of-fair representation claim) without obtaining leave of court.  Plaintiff must clarify which claims are being alleged against each defendant, and must comply with Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

It may be that some or all of plaintiff's claims are time-barred.  However, that issue is not presently before the court.  It also may be that some or all of plaintiff's claims are barred by the doctrine of res judicata, but until plaintiff has clarified the substance of his claims, the court cannot determine whether that is so.  With regard to plaintiff's first suit, however, the court notes that the dismissal was for failure to state a claim, as plaintiff failed to allege (and could not allege) that he had exhausted the procedures mandated by the CBA.  Now that the Arbitrator has issued a final decision, that reasoning no longer applies.

**IT IS SO ORDERED.**

Dated:  November 23, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge